RECEIVED

SEP ^ 3 1999

BY:_____

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

THIRD DIVISION

PATRICIA McFADDEN,

Plaintiff,

vs.

MINNESOTA PUBLIC RADIO, a
Minnesota corporation and MINNESOTA
COMMUNICATIONS GROUP, a
Minnesota corporation,

Defendants.

Civil File: 99-CV-1357 JMR/FLN

JURY TRIAL DEMANDED

## COMPLAINT

### NATURE OF CLAIM

1.      This is an action for sex, age and retaliation discrimination under 29 U.S.C. §621
et seq., the Age Discrimination in Employment Act ("ADEA") and 42 U.S.C. §2000e et seq, as
amended by the Civil Rights Act of 1991 ("Title VII").

### JURISDICTION AND VENUE

2.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

3.      Venue is proper in the District of Minnesota, pursuant to 28 U.S.C. § 1391(b) and
(c), 29 U.S.C. § 626(c)(1), and 42 U.S.C., § 2000e-5(f)(3) as Defendants are Minnesota corpora-
tions and the acts complained occurred primarily in the District of Minnesota.

SEP 0 3 1999

FILED _____ FRANCIS E. DOSAL, CLERK

JUDGMENT ENT'D _____

DEPUTY CLERK _____

## PARTIES

4.        Plaintiff Patricia McFadden ("Plaintiff") is a forty-one year old female resident of the City of St. Paul, County of Ramsey, District of Minnesota.

5.        Defendant Minnesota Public Radio ("MPR") is a Minnesota corporation with its principal place of business at 45 East Seventh Street, St. Paul, Minnesota in the District of Minnesota.

6.        Defendant Minnesota Communications Group ("MCG") is a Minnesota corporation with its principal place of business at 444 Cedar Street, St. Paul, Minnesota and is the parent corporation of Defendant MPR.

7.        Defendants MPR and MCG are collectively referred to as "Defendants."

8.        Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission on March 31, 1999.

9.        On or about June 8, 1999, Plaintiff received a Notice of Right to Sue from the Equal Employment Opportunity Commission.

## FACTS

10.       Plaintiff was employed by Defendants from September 20, 1995 until October 27, 1998.

11.       Plaintiff performed the duties of producer for Garrison Keillor's national radio program, "The Writer's Almanac".

12.       Although Plaintiff performed the work of a producer, her position was titled "coordinator", and she was paid only for a coordinator's work.

13.       Defendant MPR's male employees were not subjected to such disparities in pay and position title as was Plaintiff.

14.       Plaintiff's performance was at all times satisfactory or better.

- 2 -

15.     Plaintiff and other similarly situated women were subjected to a pattern and practice of abusive conduct by Keillor, conduct to which men were not subjected, including but not limited to the following:

(a)     Keillor complained that a woman producer gave him too much "women's material" for The Writer's Almanac, and demanded that she stop, in spite of the fact that women writers were underrepresented on the show;

(b)     Keillor complained that the material Plaintiff provided for the show had been derived from a "woman's calendar", and demanded that Plaintiff stop providing such material, in spite of the fact that women writers were under-represented on the show;

(c)     Keillor often refused to speak to Plaintiff and other similarly situated women regarding work projects;

(d)     Keillor typically refused to inform Plaintiff and other similarly situated women of his schedule for purposes such as planning taping sessions for "The Writer's Almanac" and other essential projects;

(e)     Keillor typically refused to schedule essential projects, or failed to show up for essential projects; and Plaintiff was then required to cancel vacation and other plans in order to accommodate him;

(f)     Keillor would look at material provided by Plaintiff and other similarly situated women, scowl, make faces, look disgusted and then dramatically crumple up the material and throw it across the room or into the waste-basket, in a humiliating display in front of Plaintiff and other women's co-workers;

(g)     If Keillor were late for a taping session, he typically apologized to the men on the crew and, and in contrast, ignore the presence of Plaintiff and other similarly situated women;

(h)     Keillor sent Plaintiff and other similarly situated women hostile and demeaning e-mail messages and memos;

(i)     Keillor sent Plaintiff and other similarly situated women hostile and demeaning voice mail messages;

(j)     Keillor demanded that the jobs of Plaintiff and another similarly situated women be posted and that they be required to apply for their own positions, on one occasion, posting the woman's position on the internet without her knowledge.

- 3 -

16.      In spite of complaints from Plaintiff and other similarly situated women about Keillor's misogynist and abusive conduct, Defendants' management failed and refused to take remedial action.

17.      On information and belief, Keillor demanded that Plaintiff be terminated.

18.      On or about October 27, 1998, Defendant MPR terminated Plaintiff, falsely stating that her position had been eliminated due to "restructuring."

19.      Plaintiff was replaced by a younger woman.

20.      Plaintiff is aware of other circumstances where Defendants demonstrated a preference for younger women in hiring, recruitment, and other decisions.

21.      After her termination, Plaintiff informed Defendants via her attorney that she intended to bring a discrimination claim, and Defendants then instructed Plaintiff's former co-workers and others not to speak with her.

22.      Defendant MPR has engaged in a pattern and practice of sex discrimination and retaliation against women employees including but not limited to the following conduct:

> (a)      Failing and refusing to address Keillor's pattern and practice of discriminatory, misogynist, and abusive behavior;
>
> (b)      Allowing men more favorable work schedules;
>
> (c)      Allowing men more creative opportunities;
>
> (d)      On information and belief, compensating men at a higher rate than similarly situated women;
>
> (e)      Actively discouraging and ultimately, forcing the constructive discharge of female on air-talent, for allegedly focusing on "women's issues" in programming;
>
> (f)      Allowing men to "moonlight" outside Defendant MPR at the same time discouraging women from similarly moonlighting via, for instance, threatening termination if they did so;
>
> (g)      Holding women to higher performance standards than men;

     (h)     Subjecting women to more severe criticism or discipline than men who received lesser or no criticism or discipline for similar perceived transgressions;

     (i)     Interfering with women artists' ability to perform by engaging in abusive and disruptive conduct during air time;

     (j)     Failing and refusing to promote women into positions of actual management authority;

     (k)     Discouraging women with young children from working at Defendant MPR, for example, on one occasion Defendant President William Kling told a highly respected woman broadcaster that she could return to work when her child reached school age if she didn't "burn any bridges";

     (l)     Discouraging women from becoming pregnant, for example, on one occasion Defendant MPR President William Kling tapped a pregnant woman on the abdomen and asked disapprovingly "why she did that" in front of a large group of people; and

     (m)     Allowing hostile, abusive, and sometimes violent male managers to yell, throw objects, use profanity, and direct their abusive conduct toward women.

23.     Plaintiff and other similarly situated women complained to Defendant management about the differential treatment based on gender, but Defendant management failed and refused to take action.

## COUNT ONE
## DEFENDANTS MPR AND MCG
## SEX DISCRIMINATION
## TITLE VII

24.     Plaintiff realleges the foregoing paragraphs as though fully set forth herein.

25.     In discriminating against Plaintiff and similarly situated women employees in terms and conditions of employment, Defendants violated Title VII, 28 U.S.C. § 2000e et seq.

26.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered injuries including but not limited to wage loss and emotional distress damages in excess of fifty thousand dollars ($50,000).

## COUNT TWO
## AGE DISCRIMINATION
## ADEA

27.      Plaintiff realleges the foregoing paragraphs as though fully set forth herein.

28.      Defendants discriminated against Plaintiff on the basis of age by discharging her and replacing her with a younger woman in violation of the ADEA, 26 U.S.C. § 621 et seq.

29.      As a direct and proximate result of Defendants' conduct, Plaintiff has suffered injuries including but not limited to wage loss and emotional distress damages in excess of fifty thousand dollars ($50,000).

## COUNT THREE
## RETALIATION
## TITLE VII

30.      Plaintiff realleges the foregoing paragraphs as though fully set forth herein.

31.      Plaintiff opposed Defendants and Keillor's discriminatory, hostile, and abusive conduct.

32.      Defendants retaliated against Plaintiff for her opposition and report by increasing their hostile and discriminatory conduct and by discharging her in violation of ("Title VII").

33.      As a direct and proximate result of Defendant's conduct, Plaintiff has suffered injuries including but not limited to wage loss and emotional distress damages in excess of fifty thousand dollars ($50,000).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants for the following relief:

A.      That the practices of Defendant complained of herein be determined and adjudged to be violative of the rights of the Plaintiff under Title VII of the Civil Rights Act of 1964, Title 42, United States Code, 2000e et seq., as amended by the Civil Rights Act of 1991 and the Age Discrimination in Employment Act ("ADEA"), Title 29, U.S.C. § 621 et seq.

- 6 -

B.     That a permanent prohibitory injunction be issued prohibiting the Defendants, their officers, agents, employees, and successors, from engaging in the discriminatory employment practices complained of herein.

C.     That a permanent mandatory injunction be issued requiring that the Defendants adopt employment practices in accord and conformity with the requirements of Title VII and the ADEA, and further requiring that the Defendants adopt and initiate an effective affirmative action program designed to ensure equal treatment of all their female and older employees and prospective employees.

D.     That judgment be entered in favor of the Plaintiff and against the Defendants, for backpay and frontpay in amounts owing to Plaintiff, including up to double compensatory damages, punitive damages, and damages for past and future mental anguish, pain and suffering in amounts to be determined at trial.

E.     That Plaintiff be reinstated to a career path with Defendants commensurate with her background, experience and performance, with protection against retaliation in the future.

F.     That Plaintiff be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

G.     That Plaintiff be granted attorneys' fees and the costs and expenses of this action.

H.     That the Court retain jurisdiction until such time as the Court is satisfied that the Defendants have remedied the practices complained of herein and are determined to be in full compliance with the law.

Dated: Sept. 3, 1999

MESSERLI & KRAMER P.A.

Teresa K. Patton, #205679
Susan M. Coler, #217621
1800 Fifth Street Towers
150 South Fifth Street
Minneapolis, MN 55402-4218
Telephone: (612) 672-3600

ATTORNEYS FOR PLAINTIFF

## JURY DEMAND

Plaintiff hereby demands trial by jury of all issues triable of right by a jury.

Dated: Sept. 3, 1999

MESSERLI & KRAMER P.A.

Teresa K. Patton, #205679
Susan M. Coler, #217621
1800 Fifth Street Towers
150 South Fifth Street
Minneapolis, MN 55402-4218
Telephone: (612) 672-3600

ATTORNEYS FOR PLAINTIFF

416811_1

- 8 -